[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Sales v. Ohio Pub. Emps. Retirement Bd.,* Slip Opinion No. 2019-Ohio-1568.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-1568

THE STATE EX REL. SALES, APPELLEE, *v.* OHIO PUBLIC EMPLOYEES RETIREMENT BOARD ET AL., APPELLANTS.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Sales v. Ohio Pub. Emps. Retirement Bd.,* Slip Opinion No. 2019-Ohio-1568.]

*Mandamus—Writ sought to compel Ohio Public Employees Retirement Board ("OPERS board") to grant membership status and service credit in Ohio Public Employees Retirement System to psychiatrist who had worked in a correctional institution—OPERS board did not abuse its discretion in finding that psychiatrist had been an independent contractor—Court of appeals' judgment reversed and writ denied.*

(No. 2017-1589—Submitted January 8, 2019—Decided April 30, 2019.)

APPEAL from the Court of Appeals for Franklin County, No. 16AP-582, 2017-Ohio-7835.

**Per Curiam.**

{¶ 1} Appellants, the Ohio Public Employees Retirement Board ("the OPERS board") and the Ohio Department of Rehabilitation and Correction ("ODRC"), appeal the decision of the Tenth District Court of Appeals granting a writ of mandamus compelling the OPERS board to grant appellee, Gary N. Sales, membership status and service credit in the Ohio Public Employees Retirement System ("OPERS"). For the reasons below, we reverse the court of appeals' judgment and deny the writ.

## I. Facts and Procedural History

{¶ 2} In July 1995, after the Lucasville prison riots, ODRC entered into a federal consent decree to settle a class-action lawsuit by inmates. *Dunn v. Voinovich*, S.D. Ohio No. C1-93-0166 (July 11, 1995). The consent decree required, among other things, that ODRC hire "16.15 FTE [full-time equivalent]" psychiatrists to serve the inmate population within three years of the agreement. As part of its effort to comply with the consent decree, ODRC hired Sales to work as a psychiatrist at Lorain Correctional Institution ("LCI") on July 1, 1997. Sales is a board-certified psychiatrist, addiction psychiatrist, and forensic psychiatrist. He worked at LCI until mid-February 2003.

{¶ 3} His first contract, captioned "Personal Service Contract," identified Sales as "the Independent Contractor" or "the Contractor" and was for a two-year term from July 1997 through June 1999. The contract recited the services Sales was to provide, fixed his hourly rate of compensation, established that he would work 16 hours per week and no more than 8 hours a day, and contained a declaration that "the Contractor * * * is engaged in an independent business." And the contract required Sales to submit "a contract payment form or invoice as appropriate" in order to receive payment.

{¶ 4} The parties later executed a "Contract Addendum" to extend the terms of the initial contract by two years, through June 30, 2001. The parties subsequently

2

signed two one-year contract extensions, under terms similar to those in the 1997 contract. In January 2003, Sales gave written notice of his intent to terminate the contract after the week of February 10, 2003.

{¶ 5} By letter dated February 11, 2014, Sales asked the OPERS board to declare him eligible for membership for his work at LCI. An OPERS employer-compliance specialist reviewed his file and denied his request. The letter denying the request states:

> [Y]our position was established with a contract that specifically states Independent Contractor is exempted from all ODRC employee benefits. Your contract was for a specific duration with the option of being renewed. You submitted invoices in order to receive compensation and you received a 1099 for income tax purposes. Additionally, you did not receive fringe benefits such as sick, vacation or insurance, nor were you covered by the employer's Workers' Compensation or Unemployment Compensation.

{¶ 6} Sales appealed the decision. In his appeal letter, he noted that ODRC had provided his office, equipment, and supplies and had required him to clock in and out and work an eight-hour shift.

{¶ 7} On October 3, 2014, OPERS's general counsel affirmed the denial of his application. The general counsel's letter reiterated many of the points made in the first denial letter (the "independent contractor" designation in the contracts, Sales's not having received employee benefits, the contract's requirement that Sales submit invoices in order to be paid). The general counsel's letter stated:

> With regard to the provision of equipment/supplies and control/supervision, ODRC has indicated that you were provided

with *shared* office space that was utilized by others when you were not present. Further, your hours were mutually agreed upon, considering the security needs and inmate availability. In summary, while ODRC provided office space, equipment and supplies, all of these factors are appropriate, given the nature of the services that you performed and the environment in which you provided those services. In summary, ODRC's level of control and supervision does not appear to be excessive, unreasonable or signify the existence of an employer/employee relationship.

(Emphasis sic.) In October 2014, Sales appealed the general counsel's decision to the OPERS board.

{¶ 8} The matter was assigned to a hearing examiner, who conducted an evidentiary hearing on May 8, 2015. On October 28, 2015, the hearing examiner issued a report and recommendation in favor of ODRC. Specifically, he found that Sales had been an independent contractor based on the language of the contracts and his ineligibility for sick leave, vacation leave, and health coverage. Moreover, he found that Sales had been paid at a significantly higher rate than LCI's civil-service-employee psychiatrists had been paid. The hearing examiner found no evidence that ODRC had controlled or supervised Sales "as to the manner of his work" and that he had not been subject to discipline. He gave no weight to the fact that ODRC provided an office, equipment, and supplies for Sales's use, determining that this had been necessary (1) because Sales could meet with his inmate patients only at the institution and (2) for logistical and security reasons. Likewise, the hearing examiner found that other alleged indicia of employment, such as "the issuance of an ID badge, being subjected to sign in/out procedures, and being required to attend periodic orientations or trainings were to educate and

4

update [Sales regarding] the unique culture of the prison system and how to protect [himself] in that environment."

{¶ 9} Sales objected to the report and recommendation. However, on June 15, 2016, the OPERS board accepted the findings and conclusions of the hearing examiner.

{¶ 10} Sales next commenced an action for a writ of mandamus against the OPERS board in the Tenth District Court of Appeals. The court of appeals granted ODRC leave to intervene as a respondent.

{¶ 11} On June 27, 2017, a court-of-appeals magistrate issued a decision recommending that the court not issue a writ of mandamus. With regard to Sales's contention that ODRC controlled the performance of his professional duties, the magistrate found:

> [A]ny degree of control exercised by ODRC is not inconsistent with [the] degree of control to be expected in a specialized institutional environment to ensure consistency of care and accommodate the special security concerns when dealing with prison inmate parties.

The magistrate cited no legal authority for his implicit determination that an employer can exercise greater control over an independent contractor without converting the relationship to an employer-employee relationship when the nature or setting of the work demands greater control.

{¶ 12} Sales filed objections to the magistrate's recommendation, and the court of appeals, in a two-to-one decision, sustained his objections, finding that Sales had been a part-time employee, and granted a writ of mandamus. The court set forth the following facts as illustrating the amount of control ODRC had exercised over Sales:

> Dr. Sales had to clock in and clock out. He carried an official I.D. badge. He attended training required by ODRC. His malpractice insurance was given to him by ODRC, which implies that he had no control over what entity provided the coverage. His schedule was determined by ODRC nursing staff. Treatment decisions had to be in accord with ODRC policies and guidelines.

2017-Ohio-7835, ¶ 8. The majority acknowledged that under the logic of its decision, it was likely impossible that a psychiatrist in a prison setting could *ever* be an independent contractor. *Id.*

{¶ 13} ODRC and the OPERS board appealed.

## II. Legal analysis

### A. Standard of review

{¶ 14} Mandamus is an appropriate remedy when no statutory right of appeal is available to correct an abuse of discretion by an administrative body. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, 767 N.E.2d 719, ¶ 14. Because there is no right to appeal a decision of the OPERS board, mandamus is available to correct an abuse of discretion in determining benefits eligibility. *See, e.g., State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 127 Ohio St.3d 257, 2010-Ohio-5770, 938 N.E.2d 1028, ¶ 13; *State ex rel. Hughes v. Ohio Pub. Emps. Retirement Sys.*, 36 Ohio St.3d 11, 13, 520 N.E.2d 577 (1988).

{¶ 15} An abuse of discretion exists when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, 909 N.E.2d 610, ¶ 11. The OPERS board abuses its discretion if it enters an order that is not supported by some evidence. *State ex rel. Nese v. State Teachers' Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, 991 N.E.2d 218, ¶ 26, citing *State ex rel. Schaengold*

*v. Ohio Pub. Emps. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 19. Only if the OPERS board's decision is unsupported by *any* evidence will mandamus lie. *State ex rel. Riddell v. State Teachers' Retirement Bd.*, 10th Dist. No. 13AP-660, 2014-Ohio-1646, ¶ 20.

### B. Law governing OPERS membership

{¶ 16} A "public employee," for purposes of OPERS membership, includes "[a]ny person who is an employee of a public employer." R.C. 145.01(A)(3). However, the statutory definition of a "public employee" does not include a person who "is employed on a contractual basis as an independent contractor under a personal service contract with a public employer."[1] R.C. 145.012(A)(1).

{¶ 17} In its regulations, the OPERS board has distinguished between a "contract employee" and an "independent contractor." A contract employee is a public employee and contributes to OPERS, Ohio Adm.Code 145-1-42(B)(1)(a), whereas an independent contractor is not a public employee and does not contribute to OPERS, Ohio Adm.Code 145-1-42(B)(2). The regulations define "independent contractor" as follows:

[A]n individual who:

(a) Is a party to a bilateral agreement which may be a written document, ordinance, or resolution that defines the compensation, rights, obligations, benefits and responsibilities of both parties;

(b) Is paid a fee, retainer or other payment by contractual arrangement for particular services;

(c) Is not eligible for workers' compensation or unemployment compensation;

---

[1] " 'Personal service contract' means the same as a contract for an independent contractor." Ohio Adm.Code 145-1-42(A)(3).

(d) May not be eligible for employee fringe benefits such as vacation or sick leave;

(e) Does not appear on a public employer's payroll;

(f) Is required to provide his own supplies and equipment, and provide and pay his assistants or replacements if necessary;

(g) Is not controlled or supervised by personnel of the public employer as to the manner of work; and

(h) Should receive an Internal Revenue Service form 1099 for income tax reporting purposes.

Ohio Adm.Code 145-1-42(A)(2).

{¶ 18} By contrast, the regulations define "contract employee" as follows:

[A]n individual who:

(a) Is a party to a bilateral agreement which may be a written document, ordinance, or resolution that defines the compensation, rights, obligations, benefits and responsibilities of the individual as an employee;

(b) Is paid earnable salary at a specific periodic rate for services personally performed for the public employer and who appears on the employer's payroll;

(c) Is eligible for workers' compensation or unemployment compensation;

(d) May be eligible for employee fringe benefits such as vacation or sick leave;

(e) Is controlled or supervised by personnel of the public employer as to the manner of work; and

(f) Should receive an Internal Revenue Service form W-2 for income tax reporting purposes.

Ohio Adm.Code 145-1-42(A)(1). The OPERS board has discretion to weigh the factors listed in the definition of "independent contractor." *See Schaengold,* 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, at ¶ 6, 20, 23.

*C. Application of relevant factors*

{¶ 19} The OPERS board did not abuse its discretion in finding that Sales was an independent contractor under Ohio Adm.Code 145-1-42. His employment contract expressly designated him as an independent contractor. He was required to submit invoices for payment for his work. He was ineligible for benefits and workers' compensation. And when it came to diagnosing his patients, ODRC did not control his discretion. These facts constitute "some evidence" to support the OPERS board's decision. *See Schaengold* at ¶ 20 (holding that the evidence supporting the OPERS board's determination that the claimant was an independent contractor included that he was paid a flat fee for services performed under a contract; was ineligible for workers' compensation, unemployment compensation, or other employee fringe benefits; and did not appear on the municipal payroll as an employee).

{¶ 20} Sales contends that the ODRC *did* exercise control over him, pointing to evidence that he was obliged to wear an ID badge and to swipe his badge when he came in and when he left, that the institution controlled the scheduling of his appointments, and that he was not permitted to bring his own supplies and equipment into the facility but had to use the materials provided to him. But in this situation, these facts are not indicia of an employer-employee relationship. Rather, they are examples of security measures the facility must impose upon every person entering the facility: contractors, employees, and visitors alike. A correctional institution has unique safety and security concerns, and the fact that it must

implement rules to address those concerns does not change the nature of its contractual relationship with its venders.

**{¶ 21}** The "some evidence" standard we employ recognizes that " '[t]he determination of disputed facts and the weighing of evidence are exclusively within the jurisdiction and authority of the' " relevant agency. *State ex rel. Ingold v. Ormet Corp.*, 39 Ohio St.3d 353, 355, 530 N.E.2d 920 (1988), quoting *State ex rel. Frigidaire Div., Gen. Motors Corp. v. Indus. Comm.*, 35 Ohio St.3d 105, 106, 518 N.E.2d 1194 (1988). The language of Sales's contracts, the fact that he was required to submit invoices in order to be paid for his work, and his ineligibility for benefits that were available to ODRC's contract employees, all constitute "some evidence" to support the OPERS board's conclusion that Sales was an independent contractor. We therefore reverse the judgment of the Tenth District Court of Appeals and deny the requested writ of mandamus.

Judgment reversed<br>and writ denied.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Gary N. Sales, pro se.

Dave Yost, Ohio Attorney General, Eric E. Murphy, State Solicitor, Stephen P. Carney, Deputy Solicitor, and John J. Danish, Mary Therese Bridge, and Erin E. Butcher, Assistant Attorneys General, for appellants.

_____