[Cite as *State ex rel. Anderson v. State Teachers Retirement Sys. Bd.*, 2021-Ohio-1378.]

IN THE COURT OF APPEALS OF OHIO

TENNTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel Bart G. Anderson, | : | |
| Relator, | : | No. 19AP-293 |
| v. | : | (REGULAR CALENDAR) |
| State Teachers Retirement System Board of Ohio, | : | |
| | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on April 20, 2021

**On brief:** *Graff and McGovern, L.P.A.*, and *Luther L. Liggett, Jr.*, for relator.

**On brief:** *Dave Yost,* Attorney General, *Isaac Molnar*, and *Mary Therese J. Bridge,* for respondent.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1} Relator, Bart G. Anderson, filed this petition requesting this court to issue a writ of mandamus ordering respondent, the State Teacher's Retirement System Board ("STRS"), to reinstate his retirement credit for school years 2013-14 and 2014-15. We referred the case to a magistrate for briefing and argument and, on August 19, 2020, the magistrate determined that a writ should issue. STRS filed timely objections and the case has now been submitted for ruling.

{¶ 2}     The facts of this case are simple and are undisputed. North Bass Local School District ("North Bass") operates no schools and employs no instructional staff but is required by statute to employ a superintendent. (Mag's. Decision at ¶ 4, citing R.C. 3319.01). The small number of students that live on North Bass Island attend schools in different districts, and the superintendent's role is "on call." Anderson served as the school superintendent of North Bass from 1996 through 2015 but also held fully paid positions with other STRS employers from the years 1996 through 2013. Anderson's contract with the North Bass awarded him salary compensation at a rate of $1 per month for his service and provided both that "[a]ll contributions for STRS shall be picked up by the board on the salary listed in the contract and for future amendments," and those contributions "shall be included in the Superintendent's salary for STRS purposes." *Id.* at ¶ 6 (quoting relator's employment agreement).

{¶ 3}     It appears that Anderson and the North Bass School Board entered into the employment agreement under the assumption that, although Anderson's actual salary was nominal, he would receive a full year of STRS retirement benefit for each of his years of service. The first appearance of his North Bass position on Anderson's STRS account is for the 2007-08 school year, which indicates he received a total salary of $365. His records for the 2013-14 and 2014-15 years indicate he received $12 each year. Anderson received full retirement credit for the school years prior to 2013, while he was contemporaneously employed in another STRS-eligible position. The only years at issue in this case are the school years 2013-14 and 2014-15—during those years, the only STRS-eligible position Anderson held was as a North Bass superintendent.

{¶ 4}     By letter dated November 3, 2015, STRS recalculated the retirement credit that Anderson was to receive for 2013-14 and 2014-15, lowering credit for each year from 1.00 years of service to .01 years of service. *Id.* at ¶ 9. Anderson then made significant efforts to get this recalculation reversed, as did the treasurer of North Bass, Paul Stonerook, as did the North Bass School Board. The North Bass School Board in fact adopted a resolution in agreement with Anderson that the STRS credit was a material term of their service contract, and it was "the Board's determination that Dr. Anderson provided services to the Board as its Superintendent every day of the [2013-14 and 2014-15] school year, 365 days [per year], as required by R.C. 3319.01." *Id.* at ¶ 13, quoting Agreement Clarifying the Employment

Contract for Bart G. Anderson. Similarly, the North Bass School Board took the position that the retirement days are crucial to attracting candidates for their statutorily required superintendent position, because they operate in such a remote area. But notwithstanding the new resolution between Anderson and North Bass, STRS refused to recalculate Anderson's service credit. STRS indicated it was "not persuaded by your letter or the resolution retroactively recharacterizing the terms of Mr. Anderson's employment with the North Bass School District." *Id.* at ¶ 15, quoting letter from STRS General Counsel to Paul Stonerook.

{¶ 5}   Anderson filed the instant petition for writ of mandamus on May 3, 2019. After submission of stipulated evidence by both parties and certain additional evidence by Anderson, the case was argued and submitted to a magistrate. The magistrate rejected some of the submitted evidence, including the clarifying agreement between Anderson and the school board, but nevertheless concluded:

> STRS has not fully considered the evidence and has taken improper notice of relator's compensation during the disputed periods, rather than only considering days of service. * * *. [Moreover,] Ohio law does not expressly exclude on-call days from "days of service" as counted in Ohio Adm.Code 3307:1-2-01 * * *. The parallel offered by STRS staff between relator's position and that of substitute teachers, moreover, is inapposite * * * [in contrast to substitute teachers, relator] was not free to decline any North Bass commitments as they might arise.
>
> Under the interpretation of Ohio Adm.Code 3307:1-2-01 offered in opposition to relator's complaint, STRS participants are left to guess at the retirement value of days served on call even as they perform such duties, and STRS staff are left with the task of determining, long after the fact and on an individual and inconsistent basis, whether credit will be accorded. [R.C. 3307.53] and [OAC 3307:1-2-01], however, refer to days of service, not days in which specific identifiable tasks were accomplished. The magistrate finds that relator was "of service" to North Bass for 365 days per school year under his contract, and should receive corresponding service credit.

*Id.* at ¶ 12-13. Accordingly, the magistrate recommended that this court issue a writ "ordering the board to grant relator his service credit for the years at issue." *Id.* STRS objects to this decision, arguing the magistrate erred by substituting his judgment for that

of the STRS board and further that STRS' decision was supported by "some evidence" and that therefore a writ should not issue.

{¶ 6} We begin by observing that neither party asserts a procedural bar to Anderson's petition. Accordingly, this case turns entirely on the validity of STRS' interpretations of R.C. 2207.53 and Ohio Adm.Code 3307:1-2-01. The statute provides:

> The state teachers retirement board shall credit a year of service to any teacher participating in the STRS defined benefit plan who is employed on a full-time basis in a school district for the number of months the regular day schools of such district are in session in said district within any year. The board shall adopt appropriate rules and regulations for the determination of credit for less than a complete year of service, and shall be the final authority in determining the number of years of service credit. The board shall credit not more than one year for all service rendered in any year.
>
> The board shall adopt rules for the purpose of determining the number of years or partial years of service credit to be granted to a member under section 3307.25 of the Revised Code. The amount of service credit shall be based on the member's length of participation in and contribution to an STRS defined contribution plan. The board shall be the final authority in determining the amount of service credit.

R.C. 3307.53. And the administrative code in effect at the time of Anderson's disputed years of service provided in part as follows:

> (A) As used in section 3307.53 of the Revised Code and this rule:
>
> (1) "Full-time service" means employment as a teacher under a contract that:
>
> (a) Requires teaching service that begins and ends on either:
>
> (i) The first and last day of a year consisting of three hundred sixty-five days; or
>
> (ii) The first and last day of a school year of at least one hundred eighty days or three quarters; and
>
> (b) Provides compensation in an amount equal to the rate paid under an employer's overall salary schedule for teachers of the same experience teaching the entire day for every day of the school year. College and university teachers must be employed

under a contract that provides compensation equal to the rate paid to other teachers of the same experience teaching the designated full-time equivalent workload.

(2) "Part-time service" means employment on any basis other than those identified in paragraph (A)(1) of this rule.

(B) Full-time service:

(1) One hundred twenty or more days or two quarters of contributing service as a teacher for a single employer constitutes one year of service credit to be used in determining total credit for retirement purposes.

(2) If less than one hundred twenty days of teaching, the annual service credit will be determined in accordance with paragraph (C) of this rule.

Ohio Adm.Code 3307:1-2-01. Based on its interpretation of the statute and rule, STRS determined Anderson was not entitled to credit. Specifically, STRS interpreted the statutory phrase "of service" as "days [in which] the employee actually was 'of service' and require[d] some evidence of that service." (Objs. to the Mag's. Decision at 6.) As noted above, the magistrate rejected this view, and concluded that both the statute and rule "refer to *days* of service, not days in which specific identifiable tasks were accomplished," and found that Anderson "was 'of service' to North Bass for 365 days per school year under his contract." (Emphasis added.) (Mag's. Decision at 13.)

{¶ 7} Our review of Anderson's petition is guided by the general rule that we "must accord [STRS] the deference to which it is entitled in interpreting the pertinent legislation * * *." *State ex rel. Gill v. School Emps. Retirement Sys. Ohio*, 121 Ohio St.3d 567, 2009-Ohio-1358, ¶ 28. Mandamus is available as remedy to correct an abuse in determining benefits eligibility by a state retirement fund. *State ex rel. Sales v. Ohio Pub. Emp. Retirement Bd.*, 156 Ohio St.3d 433, 2019-Ohio-1568, ¶ 6. STRS abuses its discretion in making a benefits determination only if it acts in a manner that is unreasonable, arbitrary, or unconscionable. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14. Moreover, STRS's decision on a benefits determination is an abuse of discretion if it has entered an order that is not supported by "some evidence." *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, ¶ 20-21, citing *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d

344, 2007-Ohio-6667, ¶ 9. The presence of contrary evidence is not dispositive so long as the "some evidence" standard has been met. *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, ¶ 29. Accordingly, mandamus will lie only if the board's decision is not supported by any evidence. *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 144 Ohio St.3d 367, 2015-Ohio-3807, ¶ 17.

{¶ 8} The magistrate recommended granting the writ for two reasons. First, the magistrate determined that STRS should not have considered Anderson's overall compensation in determining whether his on-call days constitute days "of service" under the statute and rule. Second, the magistrate determined that STRS's interpretation of Ohio Adm.Code 3307:1-2-01 was incorrect, because the rule does not expressly state that "on-call" days are to be excluded from the days "of service" counted under the rule. The magistrate was concerned with a practical issue—in situations at the margins like Anderson's, claimants must guess about the retirement value of their work at the time they are performing it.

{¶ 9} We find these justifications unpersuasive. Most importantly, we believe the magistrate failed to give due deference to STRS's interpretation of its own statute and administrative rules, in contrast to the requirements of *Gill. See Gill,* 2009-Ohio-1358, at ¶ 8. Moreover, we believe that "some evidence" supports STRS's decision that this arrangement by North Bass and Anderson was ultimately a way to shift the cost of its statutorily mandated superintendent onto STRS, and we do not believe that the evidence presented supports the magistrate's conclusion that Anderson was "of service" to the district for all 365 days of the years in question. As STRS observes in its objections, it "specifically requested records to prove service days [and] while "Treasurer Paul Stonerook stated that such records did exist * * * [r]elator chose not to provide any evidence of actual service—no emails, no email usage logs, no phone records, no calendar dates, no meeting dates, no reports." (Objs. to Mag's. Decision at 10.)

{¶ 10} In light of any evidence to the contrary, the plain terms of Anderson's contract the district, even standing alone, were a sufficient basis for STRS to determine that he performed only intermittent service and that his status as being "on-call" is not alone sufficient to establish that he was "of service" for all the days he and the district have claimed. This decision was supported by "some evidence," and STRS's interpretation of the

statute and rules is entitled to deference. Accordingly, we conclude that the magistrate's decision was erroneous, that the respondent's objections should be sustained, that the relator's petition is without merit, and that the writ should be denied.

*Objections sustained and writ denied.*

KLATT and SADLER, JJ., concur.

———————————

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Bart Anderson, | : | |
| Relator, | : | |
| v. | : | No. 19AP-293 |
| State Teachers Retirement Board, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

MAGISTRATE'S DECISION

Rendered on August 19, 2020

*Graff and McGovern, LPA,* and *Luther L. Liggett, Jr.,* for relator.

*Dave Yost,* Attorney General, *Isaac Molnar,* and *Mary Therese J. Bridge,* for respondent.

{¶ 11} Relator, Bart Anderson, seeks a writ of mandamus ordering respondent, State Teachers Retirement Board ("the Board" or "STRS Board"), to reinstate relator's retirement credit in the State Teachers' Retirement System ("STRS") for certain periods in which relator worked as a school superintendent for North Bass Local School District. The dispute over creditable service in large part arises out of North Bass's unusual position as an island school district that does not operate any school or employ any teachers but sends its few students to neighboring school systems under contract.

Findings of Fact:

{¶ 12} 1. Relator is an accredited educator who began earning retirement credit under STRS as a teacher in 1992.

{¶ 13} 2. Relator assumed his duties as Superintendent of North Bass Local School District in 1996 and served through July 31, 2015.

{¶ 14} 3. Relator's service as North Bass Superintendent was pursuant to annual contracts that recognized the unique financial position of the district and limited scope of duties of the position by paying relator a nominal sum.

{¶ 15} 4. Every Ohio school district, even one like North Bass that operates no schools and employs no instructional staff, is required to employ a superintendent pursuant to R.C. 3319.01.

{¶ 16} 5. Relator held fully-paid positions with other STRS employers for the years from 1996 to 2012, so that credit for his North Bass service for those years is not at issue because relator could only earn one year of STRS credit for every year of employment, regardless of the number of employers.

{¶ 17} 6. Relator entered into employment agreements with North Bass for 2013-2014 and 2014-2015 school years specifying as follows:

> This employment contract is entered into this 20th day of June, 2013, by and between the Board of Education of the North Bass Island School District (hereinafter "Board") and Bart Anderson, hereinafter "superintendent."
>
> [One] TERMS
>
> a. In order to fulfill the requirements in Ohio law, the Board in accordance with its minutes from the meeting held on June 20, 2013, hereby employs, and the Superintendent hereby accepts employment as Superintendent of Schools for a period of five (5) years commencing on the first day of August 2013 and ending on the 31st day of July 18, 2018.
>
> [Two] SALARY COMPENSATION
>
> a. The Superintendent shall annually, before July 1 of each year pay the superintendent a salary of $1 per month for the services contained in the contract. All requirement contributions for STRS shall be picked up by the board on the salary listed in the contract and for future amendments. Said pick-up shall be included in the Superintendent's salary for STRS purposes. Further, the superintendent shall be provided:

I. The same benefits as provided to other employees or member of the board of the district.

II. Reasonable expenses shall be reimbursed at the board approved rates for work performed for the school district as approved by the treasurer.

[Three] DAYS TO BE WORKED

a. The superintendent shall devote such time and energies necessary to perform the duties specified in law. Because of the unique nature of the Island school district, the superintendent shall be full-time and on-call 365 days annually. The superintendent agrees to be on call [a]t all times necessary to fulfill these duties and the board acknowledges the superintendent shall be employed in another capacity, elsewhere, during the time of this agreement and shall not maintain set hours or schedule to fulfill the duties but shall be available at board's discretion.

[Four] SICK LEAVE

a. The superintendent shall be entitled to fifteen (15) days of sick leave annually in accordance with Ohio law. Sick leave shall accumulate without limit.

In witness whereof, the parties have set their hand to this contract on June 20, 2013.

{¶ 18} 7. The first school year for which relator's North Bass employment appears on his STRS account record is the 07-08 school year with earnings of $365. Similarly low figures appear annually thereafter, culminating in the 2013-2014 and 2014-2015 school years, in which relator received $12 each year from North Bass Local Schools.

{¶ 19} 8. In contrast with prior years, for 2013-2014 and 2014-2015, relator did not hold other STRS or other public retirement service employment that could provide service credit for those years.

{¶ 20} 9. By letter dated November 3, 2015, STRS informed relator that he would not receive credit for two years of his North Bass employment:

A recent audit of your account revealed an error in the service credit reported by North Bass Local Schools for the years shown below. Your service credit has been corrected as follows:

| School year | Previous credit | Corrected credit |
|---|---|---|
| 2013-2014 | 1.00 | 0.01 |
| 2014-2015 | 1.00 | 0.01 |

{¶ 21} 10.  Relator continued to seek credit for the years in question. Paul Stonerook, the Treasurer of North Bass, furnished to STRS a copy of relator's employment contract. STRS employee Kele Willis acknowledged receipt via e-mail on November 13, 2015:

> I will forward your email and attachment for review however based upon the earnings it doesn't appear that a full year of service credit is justified. I understand that his current contract states that he worked 365 days *but the credit in comparison to the compensation will also factor into this.*

(Emphasis added).

{¶ 22} 11. Willis provided a further e-mail response later that day:

> Thank you for supplying the contract for Mr. Anderson. We will need more information regarding the service credit adjustment you requested. In order to calculate service, we would need documentation of the number of days that Mr. Anderson actually performed a service for North Bass Schools.  Being "on-call" would not count as days worked in the service credit calculation.  For example, many substitute teachers are "on-call" for the full school year but are only called up to work a few days.  The service credit calculation would use the number of days the substitute actually worked divided by 180.

{¶ 23} 12. Stonerook then replied to Willis's e-mail with the following e-mail to STRS supporting relator's position that he worked 260 days of service each year:

> It is my calculation, belief, interpretation, and verification as treasurer of the board that Dr. Anderson was "in service" and that official school district email was checked, responded and appropriately updated a minimum of five (5) days per week and therefore at a minimum, 260 days of service were performed. Dr. Anderson never failed to reply to a request, email or correspondence within one business day. Based on email records alone, over 260 days of service can be verified. Although small, North Bass local completes the same reports as every other school district.
>
> Requirements for the Ohio Department of Education (e.g., Ohio CORE, CCIP, SAFE, eTEPS, Ohio testing portal,

Department of Health Immunization annual record, Blind data survey, Federal Drug Free portal, Special Education annual report, School Finance, STRS, SERS, Battelle for Kids, eVASS, Ohio Department of Education Secure Data System, SSID verification, Ohio Department of Education Portal, Ohio Educational Data System, Secure Data Portal); Updating policy, currency of policy, rules and administering the responsibilities of the school district. For example, all North Bass Local School policies were updated during the most recent two school years; Board agenda, minutes, audit and preparation of documents necessary for the board to conduct the business of the school district; and other matters as they arose with the county auditor, Ohio Department of Education, Ohio Legislature, etc.

{¶ 24} 13. The North Bass School Board met on May 12, 2016 and, among other business, "James Yelensky moved to approve Bart Anderson's contract for Superintendent for North Bass School District for 2013-2014 and 2015-2015 [sic] to correct STRS errors. Mary Stonerook seconded the motion. All voted yes, motion carried." This "clarifying" resolution and contract retroactively enacted by the board provided as follows:

AGREEMENT
CLARIFYING THE EMPLOYMENT CONTRACT
FOR
BART G. ANDERSON

WHEREAS there is currently in existence a contract between the NORTH BASS LOCAL SCHOOL DISTRICT BOARD OF EDUCATION (hereinafter "the Board") and BART G. ANDERSON (hereinafter "Dr. Anderson") for the employment of Dr. Anderson as an Administrator through June 30, 2015; and

WHEREAS, R.C. 3319.01 mandates that local school districts employ a superintendent 365 days per year; and

WHEREAS, Dr. Anderson was previously employed by the Board as the Superintendent of the North Bass Local School District pursuant to a contract with an effective date of August 1, 2011 ("Superintendent Contract"); and

WHEREAS, the Board desired Dr. Anderson to perform his under R.C. 3319.01 off-campus 365 days per year due to the fact that the North Bass Local School District is located on a remote island; and

WHEREAS, the Board did not require Dr. Anderson to maintain a log of his days or hours worked as the Superintendent of the North Bass Local School District; and

WHEREAS, pursuant to the terms of the Superintendent Contract and consistent with Dr. Anderson's position and employment, the Board properly reported to the State Teachers Retirement System ("STRS") that Dr. Anderson qualified for one (1.00) year of STRS service credit for the 2013-2014 school year and one (1.00) year of STRS service credit for the 2014-2015 school year; and

WHEREAS, on November 3, 2015, STRS sent a letter to Dr. Anderson indicating that his service credit had been "corrected" for the 2013-2014 school year from 1.00 years to 0.01 years and for the 2014-2015 school year from 1.00 years to 0.01 years; and

WHEREAS, the Parties mutually agree that Dr. Anderson' receiving one (1) year of STRS service credit for each year he served as the Board's Superintendent was a material term of the Superintendent Contract; and

WHEREAS, the Board desires to clarify the terms of Dr. Anderson's Superintendent Contract in order to avoid any potential claims for breach of contract; and

WHEREAS, the Board recognizes that it may be difficult to attract administrators to work in the North Bass Local School District if STRS service credit is not awarded despite the administrators providing substantial and necessary services for the Board;

IT IS HEREBY AGREED by the Board and Dr. Anderson as follows:

[One] While there is no floor or limitation on the daily rate paid to a superintendent hired pursuant to R.C. 3319.01, the parties mutually agree that Dr. Anderson be compensated at the rate of $1.00 per day for every day of service he provided to the Board as its Superintendent during the 2013-2014 school year and at the rate of $1.00 per day for every day of service he provided to the Board as its Superintendent during the 2014-2015 school year.

[Two] The daily rate paid to Dr. Anderson for his service to the Board as the Superintendent of the North Bass Local

School District during the 2013-2014 and 2014-2015 school years has no bearing on the quality, level, or amount of service Dr. Anderson provided to the Board and the North Bass Local School District in performing all duties required of him as Superintendent under Title 33 of the Ohio Revised code, as well as those that were required of him by the Board.

[Three] It is the Board's determination that Dr. Anderson provided services to the Board as its Superintendent every day of the 2013-2014 school year–i.e., 365 days, as required by R.C. 3319.01.

[Four] It is also the Board's determination that Dr. Anderson provided services to the Board as its Superintendent every day of the 2014-2015 school year–i.e., 365 days, as required by R.C. 3319.01.

[Five] Based on the foregoing, the Board agrees to pay Dr. Anderson the sum of $730.00 for his 365 days of service as the Board's Superintendent during the 2013-2014 school year and for his 365 days of service as the Board's Superintendent during the 2014-2015 school year. Said payment shall be made to Dr. Anderson within 30 days from the execution of this agreement.

[Six] The Board further agrees that all required employee retirement contributions for STRS shall be "picked up" by the Board on the sum paid to Dr. Anderson for his service to the Board pursuant to this agreement. Said "pick up" shall be included in Dr. Anderson's salary for STRS purposes.

[Seven] The Board further agrees to file all necessary documentation with STRS with regard to the sum paid to Dr. Anderson for his service to the Board pursuant to this agreement and the Board's determination of the number of days worked by Dr. Anderson as the Board's Superintendent during the 2013-2014 and 2014-2015 school years.

[Eight] The Board and Dr. Anderson hereby release any and all claims they may now have or could have asserted against the other, or the officers, employees, or agents of the other, past or present, arising from or connected with the employment of Dr. Anderson with the Board, through June 30, 2015–i.e., Dr. Anderson's last day employed as the Board's Superintendent.

WHEREFORE the parties, by their own hand or through their designated representatives, have indicated their acceptance of the foregoing terms by affixing their signatures below:

FOR DR. BART G. ANDERSON:

/S/ Bart G. Anderson

Dated: 3-30-16

FOR THE NORTH BASS ISLAND LOCAL SCHOOL DISTRICT BOARD OF EDUCATION

/S/ James A. Yelensky
President

/S/ Paul Stonerook
Treasurer

Dated: 5-12-2016

Resolution Number: 2016120

{¶ 25} 14. The board passed a substantially similar resolution in 2017.

{¶ 26} 15. Each of the two North Bass School District Board's resolutions, when conveyed to STRS staff, met with the response that "STRS Ohio is not persuaded by your letter or the resolution retroactively recharacterizing the terms of Mr. Anderson's employment with the North Bass School District. The service credit reductions implemented by STRS Ohio will remain in place." (Letter from William J. Nevell, STRS General Counsel, October 17, 2017, to Paul Stonerook, Treasurer, North Bass Island Local District, stipulated record at 36.)

{¶ 27} 16. James VanErten, Ottawa County Prosecuting Attorney, also submitted letters to STRS to support relator's position.

{¶ 28} 17. STRS considered, at relator's urging, a comparable service credit situation for Matthew Markling, past superintendent for Middle Bass Local Schools and relator's successor as superintendent with North Bass. Middle Bass is another island school district with minimal activity other than contracting for its students to receive education elsewhere. STRS considered Markling's account, which indicated that STRS had initially reduced Markling's service credit for his work with North Bass and Middle Bass, a period

in which Markling earned at most $250 per school year. After Markling complained, STRS reinstated Markling's service credit for his years with the island school districts. STRS distinguished Markling's employment on the basis that Markling's contracts with Middle Bass specified 250 days of work, rather than the on-call requirements in relator's contracts, and Markling's contract contained specific requirements for Markling to attend professional development meetings and maintain membership in the Buckeye Association of School Administrators.

{¶ 29} 18. STRS denied relator's request to reinstate his service credit.

{¶ 30} 19. Relator filed his complaint in mandamus with this court on May 3, 2019.

{¶ 31} 20. The parties submitted evidence in the form of a certified record of proceedings containing all documentation of correspondence and responses with STRS, additional evidence submitted by respondent regarding school board contracts for relator and Markling, and subsequent school board resolutions and correspondence.

{¶ 32} 21. Relator submitted additional evidence in the form of his own affidavits, a supplemental affidavit from North Bass School Board, and two affidavits from Markling. STRS moved to strike relator's supplement, and then withdrew the motion.

Discussion and Conclusions of Law:

{¶ 33} Mandamus is available as a remedy to correct an abuse in determining benefits eligibility by a state retirement fund. *State ex rel. Sales v. Ohio Pub. Emp. Retirement Bd.*, 156 Ohio St.3d 433, 2019-Ohio-1568, ¶ 6. There is an abuse of discretion only if STRS acts in a manner that is unreasonable, arbitrary, or unconscionable. *State ex rel. Pipoly v. State Teachers Retirement Sys.*, 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14. Another factor in considering whether STRS has abused its discretion is whether STRS has entered an order that is not supported by at least "some evidence." *State ex rel. Marchiano v. School Emps. Retirement Sys.*, 121 Ohio St.3d 139, 2009-Ohio-307, ¶ 20-21, citing *State ex rel. Grein v. Ohio State Highway Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, ¶ 9. The presence of contrary evidence is not dispositive, so long as the some evidence standard has been met. *State ex rel. Am. Std., Inc. v. Boehler*, 99 Ohio St.3d 39, 2003-Ohio-2457, ¶ 29. Mandamus will lie only if the board's decision is not supported by any evidence. *State ex rel. Woodman v. Ohio Pub. Emps. Retirement Sys.*, 144 Ohio St.3d 367, 2015-Ohio-3807, ¶ 17.

{¶ 34} Relator presents two arguments: first, that applicable statutes and STRS administrative regulations provide a clear legal right to service credit for the years in question, and second, that STRS's disparate treatment of Markling under essentially identical employment conditions establishes an abuse of discretion by STRS in denying credit to relator where it had been granted to Markling.

R.C. 3307.53 provides that STRS will calculate service credit as follows:

The state teachers retirement board shall credit a year of service to any teacher participating in the STRS defined benefit plan who is employed on a full-time basis in a school district for the number of months the regular day schools of such district are in session in said district within any year.

STRS then promulgated Ohio Adm.Code 3307:1-2-01 to further refine the calculation of service credit:

(C) Calculation of service credit for part-time service:

(1) If a teacher has taught in a given year for one employer for at least ninety days or five hundred hours, where hours are used only when the actual number of days of service is not available from the employer's records, service credit shall be calculated as follows, provided that the employment relationship has been in effect for a period of time at least equal to one hundred twenty days of that school year:

(a) If total compensation for the year is in an amount at least equal to the base amount as defined in section 3317.13 of the Revised Code, annual service credit shall be one year.

(b) If total compensation for the year is in an amount less than the base amount as defined in section 3317.13 of the Revised Code, annual service credit shall be the lesser of:

(i) Actual days of service divided by one hundred eighty; or

(ii) Hours of service divided by one thousand, but only if the actual number of days of service is not available from the employer's records; or

(iii) Actual compensation for the year divided by twelve thousand dollars.

(2) If a teacher has taught for one employer for less than ninety days or five hundred hours in a year or the employment

relationship has been in effect for a period of time less than one hundred twenty days of that school year:

(a) Service credit will be determined by the lesser of:

(i) Dividing the number of days or partial days for which compensation was paid for actual teaching service rendered by one hundred eighty; or

(ii) Actual compensation for the year divided by twelve thousand dollars.

(b) If actual number of days or partial days taught is not available from payroll records and the teacher is compensated for hourly service, service credit will be determined by the lesser of:

(i) Dividing the number of hours for which compensation was paid by one thousand; or

(ii) Actual compensation for the year divided by twelve thousand dollars.

(3) If actual number of days or partial days taught is not available from payroll records and the teacher is compensated for per cent based salaried service, service credit granted on a contract which is issued on per cent of full-time employment as a teacher will be determined in accordance with the actual contract percentage averaged over three quarters or two semesters during the year, except that one full year of service credit will be granted when such employment exceeds sixty-six per cent averaged over three quarters or two semesters during the year.

{¶ 35} STRS does not dispute that, under the statute and regulation, relator seeks service credit under the provisions that calculate days of service rather than the alternative bases of the amount of dollar compensation, retirement contribution, or rules pertaining to state minimum salary as a qualifier. He therefore seeks service based on "[a]ctual days of service divided by one hundred eighty" under Ohio Adm.Code 3307:1-2-01(C)(1)(b)(i). Relator asserts that he satisfies requirements for a full year's credit because his employment relationship was in effect for at least 120 days of a school year, and the on-call provision of his contract meant that he worked every day of the year, and that this divided by 180 yielded a full year of credit. Relator argues that STRS illegally neutralized this standard when it

improperly declared that relator's contract calling for him to be on-call every day did not establish "days of service" to meet the Ohio Adm.Code 3307:1-2-01(C)(1)(b)(i) standard. Relator also points out that communications from STRS staff improperly inject the amount of relator's compensation as a factor in the decision, as found in Kele Willis's November 13, 2015 e-mail: "[t]he credit *in comparison to the compensation* will also factor into this." (emphasis added).

{¶ 36} STRS concedes that neither statute nor regulation specifically addresses whether "on-call" time is work time for purposes of determining STRS credit. STRS points out, however, that comparable Federal Fair Labor Standards Act ("FLSA") regulations distinguish between work and on-call time and provide that "an employee who is not required to remain on the employer's premises * * * is not working while on call." 29 CFR 785.17. STRS then points out that relator was offered the opportunity at various points in the process to furnish evidence of the number of days that relator engaged in activities on behalf of the school district, and has not done so.

{¶ 37} The parties have not offered, nor has the magistrate discovered, a statute or regulation pursuant to which relator could find legal recourse to contest the STRS staff decision denying his service credit. Unlike cases involving disputes over final average salary, which may go before the STRS board for a hearing pursuant to R.C. 3307.501(E), there is no framework for formal contestation of the staff decision in the present case. The magistrate therefore commences by concluding that relator has no adequate remedy in the ordinary course of the law and may seek a writ of mandamus.

{¶ 38} The magistrate first decides that North Bass Board's after-the-fact resolutions, as well as the legally conclusory statements provided by the Ottawa County Prosecutor, are not helpful in disposition of the current matter, which must be predicated solely upon regulations and statutes in effect at the time relator was employed and the contract under which he took that employment. The magistrate further notes that neither relator nor North Bass Schools have responded to STRS's request that they provide evidence of days on which relator "actively engaged" in school business, at least insofar as STRS seeks to define that term. Finally, the magistrate considers that STRS's disparate treatment of Superintendent Markling, while entirely based on distinctions without a

difference, is not dispositive of relator's situation. If STRS erred in favor of Superintendent Markling, repeating the error in favor of relator would not be relator's clear legal right.

{¶ 39} The Magistrate concludes, however, that STRS has not fully considered the evidence and has taken improper notice of relator's compensation during the disputed periods, rather than only considering days of service. The magistrate further concludes that Ohio law does not expressly exclude on-call days from "days of service" as counted in Ohio Adm.Code 3307:1-2-01. While Ohio does turn to the FLSA for definitions in other areas of employment law, such as R.C. 4111.14, governing minimum wage, which expressly defines certain terms ("employer," "employee," "employ," "person," and "independent contractor"), no such express reference exists in STRS's statutory and regulatory framework.

{¶ 40} The parallel offered by STRS staff between relator's position and that of substitute teachers, moreover, is inapposite. Substitute teachers are by definition only called to work as replacements to perform work normally performed by full-time teachers. The fact that they are on call to accept such work, which they may well decline on a given day, does not define their duties but only their availability as substitutes. Here, the on-call term requires a different commitment for relator, who was not free to decline any North Bass commitments as they might arise.

{¶ 41} Under the interpretation of Ohio Adm.Code 3307:1-2-01 offered in opposition to relator's complaint, STRS participants are left to guess at the retirement value of days served on call even as they perform such duties, and STRS staff are left with the task of determining, long after the fact and on an individual and inconsistent basis, whether credit will be accorded. The statute and regulation, however, refer to days of service, not days in which specific identifiable tasks were accomplished. The magistrate finds that relator was "of service" to North Bass for 365 days per school year under his contract, and should receive corresponding service credit.

{¶ 42} It is therefore the magistrate's conclusion that a writ must issue in this case ordering the board to grant relator his service credit for the years at issue.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).